IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ELIZABETH O'CONNOR    :

           :

  v.        :  Civil Action No. DKC 17-3394

           :

TIMOTHY K. CAMERON,[1]
Individually and in his   :
Official Capacity as Sheriff,
St. Mary's County     :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this discrimination case are: (1) the motion to dismiss or in the alternative for summary judgment filed by Defendant Timothy K. Cameron, St. Mary's County Sheriff, ("Defendant") (ECF No. 16); and (2) the motion to strike Plaintiff Elizabeth O'Connor's surreply also filed by Defendant (ECF No. 23). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to dismiss or in the alternative for summary judgment will be granted in part and denied in part and the motion to strike will be granted.

---

[1] The original complaint identified the St. Mary's County Sheriff's Office as the defendant. (ECF No. 1). Plaintiff amended the complaint to name Timothy Cameron who is the Sheriff of St. Mary's County. (ECF No. 15). The caption will be updated to reflect the correct name.

## I. Background

Unless otherwise noted, the facts outlined here are set forth in the amended complaint, albeit in a somewhat confused manner, and construed in the light most favorable to Plaintiff. Plaintiff is a female police officer who joined the St. Mary's County Sheriff's Department in 2000. She initially sought a position in the K-9 Division in 2007, but was not selected. Eventually [date not specified in complaint] she became the first female canine handler in the St. Mary's County Sheriff's Department. After she joined the K-9 unit, her coworkers and supervisors made a number of sexually disparaging comments. In 2008, Plaintiff complained about mistreatment from her supervisor, and the supervisor was removed. Plaintiff was labelled a troublemaker because of the complaint.

A new supervisor was appointed who also made disparaging comments along with male coworkers. For example, coworkers said "women could never advance 'without spreading [their] legs.'" (ECF No. 15 ¶ 15). Other times coworkers treated her less favorably and used gender-based slurs. One of her supervisors slapped her on the buttocks with a water jug. When Plaintiff's dog had a tooth problem, she was forced to take him to the veterinarian on her own time although a male coworker was given a "duty day." (*Id.* ¶ 21). She asserts that this caused a loss of pay.

Plaintiff complained to a supervisor on May 13, 2011. No investigation took place. Instead, Plaintiff was repeatedly investigated for *de minimis* violations. After her complaint, Plaintiff was ordered to undergo a psychological evaluation to determine her fitness for duty. Her dog retired that summer, and Plaintiff was not given another dog. A new male officer was instead assigned to the K-9 unit, and Plaintiff was assigned to patrol. (ECF No. 15 ¶¶ 22, 23).[2]

Plaintiff filed a charge with the EEOC alleging discrimination on the basis of gender on July 18, 2011. The charge alleged that the discrimination began November 1, 2010 and took place as late as June 13, 2011, and was a continuing action. She did allege, however, that she had been treated differently due to gender from the beginning of her employment. Plaintiff received her notice of right to sue from the EEOC on August 18, 2017. Plaintiff filed suit on November 14, 2017. (ECF No. 1). Defendant moved to dismiss or in the alternative for summary judgment (ECF No. 10), and Plaintiff filed an amended complaint (ECF No. 15). Defendant again moved to dismiss or in the alternative for summary judgment (ECF No. 16), Plaintiff responded (ECF No. 18), and Defendant replied (ECF No. 21). Plaintiff filed a surreply (ECF

---

[2] Plaintiff was officially reassigned by order dated July 25, 2011. (ECF No. 11-5).

No. 22), Defendant moved to strike the surreply (ECF No. 23), and Plaintiff responded (ECF No. 24).

The Amended Complaint contains two counts. Count One is entitled Title VII-Gender, and asserts that Plaintiff was subjected to (1) unequal treatment with regard to pay for taking her canine to the veterinarian, (2) inappropriate sexual comments about women in the workplace that were humiliating, (3) direct harassment by her co-workers by inappropriate touching, lewd sexual comments, and threats if she became pregnant, (4) retaliation after complaining to her supervisor, and (5) unequal treatment and retaliation when she was not given another dog when her canine retired and she was removed from the K-9 unit and replaced with a male officer. Count Two asserts a violation of the Law Enforcement Officer's Bill of Rights ("LEOBR"), due to retaliation and lack of due process. She seeks reinstatement to a position within the canine unit, front and back pay, a show cause order related to the LEOBR claim, compensatory damages for humiliation and emotional distress, punitive damages, employment benefits, costs and attorney's fees, and injunctive relief prohibiting further discriminatory conduct.

## II. Standards of Review

Defendant moved to dismiss or in the alternative for summary judgment. (ECF No. 16). Like the complaint, Defendant's motion is difficult to assess because the arguments meander between

evidence-based assertions and pleading deficiencies. For example, the motion contends, with respect to count I, that "the claims made for 'gender discrimination,' which include allegations of harassment and retaliation, are all squarely refuted by the Plaintiff's undisputed statements contained in her personnel records. In addition, the employment actions claimed to be retaliatory occurred before the Sheriff had notice of any protected activity by the Plaintiff. The only claimed instances of alleged discrimination not squarely refuted by Plaintiff's own admissions fail to state a claim because the employment decision at issue was not, as a matter of law, an adverse employment action." (ECF No. 16). Despite the difficulty in deciphering both the complaint and the motion papers, the court will endeavor to resolve the motion on the merits and streamline the issues remaining for litigation.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quotation omitted). A court must consider all well-pleaded allegations in a complaint as true, *see Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe factual allegations in the light most favorable to the plaintiff, *see Lambeth v. Bd. of*

*Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005).
Nevertheless, a court is not required to accept as true "a legal
conclusion couched as a factual allegation." *Papasan v. Allain*,
478 U.S. 265, 286 (1986).

When deciding a motion to dismiss under Rule 12(b)(6), courts
may only consider the facts contained in plaintiff's complaint.
When "matters outside the pleadings are presented to and not
excluded by the court, the motion shall be treated as one for
summary judgment and disposed of as provided in Rule 56, and all
parties shall be given reasonable opportunity to present all
material made pertinent to such a motion by Rule 56." Fed.R.Civ.P.
12; *see Talbot v. U.S. Foodservice, Inc.*, 191 F.Supp.2d 637, 639
(D.Md. 2002) (treating motion to dismiss as motion for summary
judgment where the court had to consider "two items of evidence
extrinsic to the pleadings").

Plaintiff has not requested discovery and instead has
attached her own exhibits in opposition to Defendant's motion.
Thus, Plaintiff appears to acquiesce to the motion being treated
as a motion for summary judgment, at least in part.

A motion for summary judgment will be granted only if there
exists no genuine dispute as to any material fact and the moving
party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P.
56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986);
*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v.*

6

*Johnson*, 532 F.3d 291, 297 (4th Cir. 2008).  To prevail on a motion
for summary judgment, the moving party generally bears the burden
of showing that there is no genuine dispute as to any material
fact.  *Liberty Lobby*, 477 U.S. at 248-50.  A dispute about a
material fact is genuine "if the evidence is such that a reasonable
jury could return a verdict for the nonmoving party."  *Id.* at 248.
In undertaking this inquiry, a court must view the facts and the
reasonable inferences drawn therefrom "in the light most favorable
to the party opposing the motion," *Matsushita Elec. Indus. Co. v.
Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States
v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also EEOC v. Navy
Fed. Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005), but a "party
cannot create a genuine dispute of material fact through mere
speculation or compilation of inferences."  *Shin v. Shalala*, 166
F.Supp.2d 373, 375 (D.Md. 2001) (citation omitted).

## III. Count One-Title VII

In a single count, Plaintiff purports to bring claims against
Defendant in his individual and official capacities for a variety
of forms of gender-based discrimination and for retaliation.  (ECF
No. 15 ¶¶ 34-41).

### A.   Individual Capacity Claims Against Defendant

Defendant moves to dismiss the individual capacity claims,
arguing that Defendant, in his individual capacity, is not an
employer.  (ECF No. 16-1, at 14).  Plaintiff does not appear to

7

contest this point. (ECF No. 18). "An individual person can only be liable under Title VII if that person qualifies as an 'employer' within the meaning of the statute." *Weathersbee v. Balt. City Fire Dep't*, 970 F.Supp.2d 418, 425 (D.Md. 2013). Defendant, in his individual capacity, was not Plaintiff's employer, and, therefore, he cannot be held liable for violations of Title VII. *See Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 181 (4th Cir. 1998). Plaintiff's Title VII claims against Defendant in his individual capacity will be dismissed.

### B. Disparate Treatment

As noted above, Defendant argues that he is entitled to dismissal or summary judgment on the disparate treatment claim for a variety of reasons. In addition to the reasons outlined before, Defendant asserts that the harassment claim is subject to a Faragher-Ellerth affirmative defense, the retaliation claims are refuted by other information in the case, the challenged personnel orders were disciplinary actions, and the claims based on being denied a "duty day" to take her dog to the veterinarian and not being provided a new dog are not adverse employment actions and thus fail to state a claim.

Plaintiff offers no direct evidence — evidence that "establishes the existence of discriminatory intent behind the employment decision without any inference or presumption." *E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir.

2000).  Thus, she must rely on indirect proof using the familiar burden-shifting framework.  Under the burden-shifting framework, a plaintiff has the initial burden of raising an inference of discrimination by "eliminat[ing] the most common nondiscriminatory reasons for the" adverse employment action.  *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).  A plaintiff meets her initial burden by showing: "(1) [s]he is a member of a protected class; (2) [s]he suffered adverse employment action; (3) [s]he was performing [her] job duties at a level that met [her] employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class."  *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007).  The defendant next must "articulate some legitimate, nondiscriminatory reason for" the adverse action.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  Even when a defendant can prove it would have made the same decision absent an impermissible motive, the defendant is only entitled to a "limited affirmative defense that . . . restricts the remedies available[.]"  *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 94 (2003).  If a plaintiff satisfies its initial burden and the defendant satisfies its subsequent burden, then the presumption "drops from the case" and the factfinder must decide "whether the defendant intentionally discriminated against the plaintiff."  *U.S. Postal*

*Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983) (internal quotation marks omitted).

Defendant argues that neither the loss of a duty day nor Plaintiff's reassignment constitute an adverse action for the purposes of the *prima facie* case. Defendant argues that the loss of a duty day is not sufficiently serious to constitute an adverse action and that the failure to provide Plaintiff with a new dog after her previous one retired was not an adverse employment action because "Plaintiff has no employment or property interest in the Sheriff's canine or being a member of the K-9 unit paired with a canine." (ECF No. 16-1, at 23; *see id.* at 21-23). Plaintiff responds that not receiving a duty day was equivalent to losing a day of salary and that being transferred affected her ability to be promoted and earn overtime. (ECF No. 18, at 5, 12).

"An adverse employment action is a discriminatory act which adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment." *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004) (internal quotation marks omitted). An adverse action under Title VII does not require a violation of an "employment or property interest[.]" (ECF No. 16-1, at 23). A reassignment is an adverse action when it has a significant detrimental effect such as a "decrease in compensation, job title, level of responsibility, or opportunity for promotion[.]" *Holland*, 487 F.3d at 219. Plaintiff's

reassignment from the K-9 unit may have affected Plaintiff's ability for promotion and overtime, and, thus, could constitute a materially adverse action.

In addition, Plaintiff spent a day with her dog at the veterinarians' office and received no compensation for that time. (ECF No. 16-2, at 34-36; 18-1, at 6). Plaintiff was likely entitled to compensation for the time outside of work that she spent caring for her dog. *See Holzapfel v. Town of Newburgh*, 145 F.3d 516, 522 (2d Cir. 1998) ("[A] K-9 officer must be compensated for the off-duty time that he spends performing the tasks involved in caring for and training his assigned police dog[.]") (internal quotation marks omitted); *Krause v. Manalapan Tp.*, 486 F.App'x 310, 312-13 (3d Cir. 2012) ("[C]ourts have recognized that K9 officers' off-duty care of dogs constitutes work compensable[.]"). Although Plaintiff only requested a duty day, in this context, taken in the light most favorable to Plaintiff, the denial of the duty day amounted to the denial of a benefit to which Plaintiff was entitled and therefore could constitute a materially adverse action. In sum, Plaintiff has supported the existence of an adverse action.

Defendant also argues, "The challenged personnel orders were the product of disciplinary actions Plaintiff pled guilty to, and therefore cannot constitute gender discrimination without sufficient allegations of disparate treatment." (ECF No. 16-1, at

18). This statement appears relevant to whether Defendant had a legitimate, nondiscriminatory reason for its actions, step two of the burden-shifting framework.[3] Plaintiff responds that these reasons are pretextual. (ECF No. 18, at 9).

Defendant offers the affidavit of Lt. Michael Gardiner, which states that Plaintiff's reassignment "was the result of several disciplinary infractions . . . that [Plaintiff] pled guilty to involving her discipline and judgment." (ECF No. 11 ¶ 8). Defendant, however, has not identified any general policy that required a K-9 handler to be removed due to pending investigations or as a result of multiple infractions. Plaintiff points out that Defendant's internal investigation noted that "she was an effective K9 handler." (ECF No. 18-1, at 11). The same report said that Plaintiff "was a go getter and fearless" and identified general animosity towards Plaintiff as a woman in the K-9 unit. (*Id.* at 14). Making all reasonable inferences in favor of Plaintiff and viewing the evidence in the light most favorable to her, there is a genuine dispute as to whether Plaintiff's reassignment was a result of discrimination or was a legitimate disciplinary action. Thus, summary judgment is not appropriate.

---

[3] Defendant does not argue that Plaintiff failed to meet the employer's legitimate expectations. (ECF No. 16-1, at 18-21).

C.   **Harassment and Retaliation**

1.   **Laches and Affirmative Defenses**

Defendant argues that Plaintiff's claims stemming from 2008 should be rejected on equitable grounds, citing *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101, 121-22 (2002).[4]  In *Morgan*, the Supreme Court of the United States held that "[e]mployers have recourse when a plaintiff unreasonably delays filing a charge."  536 U.S. at 121.  "[T]he filing period is not a jurisdictional prerequisite to filing a Title VII suit.  Rather, it is a requirement subject to waiver, estoppel, and equitable tolling 'when equity so requires.'"  *Id.*   The Court further stated that "an employer may [also] raise a laches defense[.]"  *Id.*  "The 'equitable exceptions' should, however, be applied 'sparingly' because 'the certainty and repose the provisions confer will be lost if their application is up for grabs in every case.'"  *Sewell v. Strayer Univ.*, 956 F.Supp.2d 658, 670 (D.Md. 2013) (quoting *Moret v. Geren*, 494 F.Supp.2d 329, 337 (D.Md. 2007)).

The judicially created doctrine of laches "may be applied by a court to bar a suit in equity that has been brought so long after the cause of action accrued that the court finds that bringing the action is unreasonable and unjust."  *Lyons P'ship, L.P. v. Morris*

---

[4]  Defendant does not argue that the alleged 2008 discriminatory acts are improper discrete acts or contravene the statute of limitations.

*Costumes, Inc.*, 243 F.3d 789, 798 (4ᵗʰ Cir. 2001). But when a cause of action is "brought pursuant to a statute for which Congress has provided a limitations period, a court should not apply laches to overrule the legislature's judgment as to the appropriate time limit to apply for actions brought under the statute." *Id.; see also Haley Paint Co. v. E.I. Du Pont De Nemours & Co.*, 279 F.R.D. 331, 336-37 (D.Md. 2012). 42 U.S.C. § 2000e-5(e)(1) provides the applicable statute of limitations for Title VII claims. Accordingly, the laches defense is inapplicable. With respect to the waiver and estoppel defenses, Defendant has not provided any factual bases for these affirmative defenses.

### 2. Hostile Work Environment

Defendant next argues that the adverse employment decisions "were the product of disciplinary actions to which Plaintiff pled guilty to, and therefore cannot constitute gender discrimination[.]" (ECF No. 16-1, at 18) (internal capitalization omitted). Plaintiff counters that these disciplinary actions occurred "after being labeled a 'troublemaker' and lend[] further credibility to the hostile environment [she] was forced to endure." (ECF No. 18, at 10).

### a. Based on Gender

To prevail on a gender-based claim of hostile work environment, the plaintiff must show that the mistreatment was because of the victim's gender. 42 U.S.C. § 2000e-2. "An employee

is harassed or otherwise discriminated against 'because of' his or her gender if, 'but for' the employee's gender, he or she would not have been the victim of the discrimination." *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 242 (4th Cir. 2000).

Here, Plaintiff was the only female in her squad. Plaintiff also was the only person subject to demeaning or humiliating treatment and was repeatedly subject to such treatment. Further, the verbal statements towards Plaintiff related directly to her gender. Thus, the only woman faced mistreatment that no man faced which demonstrates mistreatment because of gender.

### b. Severe or Pervasive

A hostile work environment claim requires showing that Plaintiff was subject to conduct "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (internal marks omitted). Plaintiff argues that she suffered from both physical and verbal harassment by male coworkers because of her gender.

The severity and pervasiveness necessary to establish a hostile work environment claim relies on "[c]ommon sense, and an appropriate sensitivity to social context . . . to distinguish between simple teasing or roughhousing . . . and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive." *Oncale v. Sundowner Offshore Servs., Inc.*,

523 U.S. 75, 82 (1988).  Here, Plaintiff was subject to both physical and verbal harassment and demeaning treatment in front of her coworkers.  Plaintiff alleges that she was subject to unwanted touching, endured personal insults relating to her gender, was labeled a troublemaker for reporting this harassment, and suffered further harassment as a result.  Plaintiff has made a sufficient showing to create a dispute of material fact at this stage.

### D.    Retaliation

As to retaliation, Defendant argues that "the employment actions [Plaintiff] claim[s] to be retaliatory occurred before the Sheriff had notice of any protected activity by the Plaintiff." (ECF No. 16-1, at 2).  Plaintiff maintains that Defendant has had notice of Plaintiff's harassment and retaliation since "late 2007 to early 2008 and it continued after she started complaining about the later harassment."  (ECF No. 18, at 6).

To establish a prima facie case of retaliation, Plaintiff must show that: (1) she engaged in protected activity; (2) her employer took an adverse employment action against her; and (3) there was a causal connection between the protected activity and the adverse employment action.  *See Holland*, 487 F.3d at 218; *Davis v. Dimensions Health Corp.*, 639 F.Supp.2d 610, 616 (D.Md. 2009).

For Title VII purposes, protected activity is conduct "oppos[ing] any practice made an unlawful employment practice[.]" 42 U.S.C. § 2000e-3(a).  Protected activity is expansive and

"encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998). At a minimum, to qualify as protected activity, a person must attempt to assert federal rights against discrimination. *See Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2nd Cir. 2002). Under Title VII, complaints are protected activity when "the employee 'communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination.'" *Bowman v. Balt. City Bd. of Sch. Comm'rs*, 173 F.Supp.3d 242, 248 (D.Md. 2016) (quoting *Crawford v. Metro. Gov't of Nashville & Davidson Cty.*, 555 U.S. 271, 276 (2009)). Plaintiff argues that she engaged in protected activity by lodging an internal complaint and later complaining of "continued retaliation and harassment until they threw her off the K9 unit." (ECF No. 15, at 5). Informal complaints are not made by lawyers and do not need to use legally actionable words or cite specific statutes. It is sufficient to state generally that a person is a victim of discrimination. *See Okoli v. City of Balt.*, 648 F.3d 216, 224 (4th Cir. 2011) ("Here, it was enough for [plaintiff] to twice complain of 'harassment[.]'"). Plaintiff's informal complaint qualifies as a protected activity.

As for the final element of a retaliation claim, a causal connection, "the employer must have taken the adverse employment action because the plaintiff engaged in a protected activity." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998).  Here, Plaintiff engaged in protected activity "some time in 2008" by reporting the sexually inappropriate comments made by Cpl. Fowler, which resulted in Cpl. Fowler losing his job.  (ECF No. 15, at 8).  Plaintiff argues that she "was labelled as a troublemaker for getting Sgt. Fowler into trouble . . . and she started being treated differently by her co-workers and supervisors, was retaliated against and was subjected to a hostile work environment."  (*Id.*).  Plaintiff further complained to a supervisor on May 13, 2011.  No investigation took place.  Instead, Plaintiff was repeatedly investigated for *de minimis* violations.  After her complaint, Plaintiff was ordered to undergo a psychological evaluation to determine her fitness for duty.  As addressed *supra*, Plaintiff's reassignment from the K-9 unit and denial of a duty day may constitute a materially adverse action, and certainly would qualify for a retaliation claim. Making all reasonable inferences in favor of Plaintiff and viewing the evidence in the light most favorable to her, there is a genuine dispute as to whether there was a causal connection between the protected activity and the adverse employment actions.  Thus, summary judgment is not appropriate.

**E.**   *Faragher-Ellerth* **Defense**

Defendant moves for summary judgment under the affirmative defense the Supreme Court of the United States established in *Faragher v. Boca Raton*, 524 U.S. 775 (1998) and *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998), commonly referred to as the *Faragher-Ellerth* defense.   In *Faragher* and *Ellerth*, the Supreme Court faced the question of when an employer could be held vicariously liable for a supervisor's conduct that violated Title VII.   *Faragher*, 524 U.S. at 796-97; *Ellerth*, 524 U.S. at 754.   The Supreme Court held that the employer could be held liable if it was negligent in preventing the conduct or the supervisor used the employer's authority to complete the violation.   *Ellerth*, 524 U.S. at 758.

Based on this principle, the Court established an affirmative defense.   Even if a supervisor's conduct violates Title VII, an employer cannot be held liable if: "(1) the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (2) the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 328 (4th Cir. 2012) (internal quotation marks omitted).   In such a situation, an employer lacks notice of a supervisor's misconduct, took steps to

prevent the conduct, and, thus, should not be held vicariously liable. *See Lissau*, 159 F.3d at 182.

"No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." *Faragher*, 524 U.S. 808. The United States Court of Appeals for the Fourth Circuit requires "some nexus between the harassment and the tangible employment action" for the defense to become unavailable. *Dulaney*, 673 F.3d at 332; *see also Lissau*, 159 F.3d at 182 ("Tangible employment actions, if not taken for discriminatory reasons, do not vitiate the affirmative defense.").

Plaintiff asserts that Defendant is not entitled to the *Faragher-Ellerth* defense because her reassignment from the K-9 unit was a tangible employment action, but does not address the nexus requirement. (ECF No. 18, at 5-8). Defendant agrees that her reassignment was a tangible employment action. (ECF No. 21, at 4) ("Plaintiff argues that her reassignment from the K-9 unit is a tangible employment action, but the Defendant's motion never argued that it was not.") (internal citation omitted). In a somewhat confusing response, Defendant first argues that the "reassignment . . . was not the product of retaliation because it took place before the Sheriff had knowledge of Plaintiff's protected activity[.]" (*Id.*). Knowledge, however, is irrelevant. *Faragher-Ellerth* is a defense to a claim brought under Title VII,

42 U.S.C. § 2000e-2. It is not a defense to a retaliation claim brought pursuant to 42 U.S.C. § 2000e-3. To prove a *Faragher-Ellerth* defense, an employer must show an employee failed to take advantage of opportunities to report misconduct. A retaliation claim generally requires an employee to show that she reported misconduct. In other words, even if the tangible employment action was not a form of retaliation, it could have been a culmination of conduct made unlawful by Title VII.

Defendant also argues that "Plaintiff pled guilty to the disciplinary charges that gave rise to the reassignment[.]" (ECF No. 21, at 4). As addressed *supra*, there is a genuine dispute of material fact as to whether the reassignment was the result of discriminatory animus or legitimate reasons. Accordingly, Defendant's motion for summary judgment on the basis of the *Faragher-Ellerth* defense will be denied.

## IV. Count Two-LEOBR

Plaintiff's complaint contains a second count for violations of the LEOBR. (ECF No. 15 ¶¶ 47-49). Defendant argues that there is no federal jurisdiction over a claim brought pursuant to LEOBR and that the Eleventh Amendment bars the claim. (ECF No. 16-1, at 11-13). Plaintiff only addresses Count II briefly, and then only addresses the purported merits of her LEOBR claim.

Defendant argues that the LEOBR only creates a procedure that may be invoked in the state circuit court, but not in federal

court.  LEOBR "provides an exclusive and self-contained procedure for the vindication of the rights granted within it[.]"  *Hatley v. Tuffy*, No. JFM-09-711, 2010 WL 4923831, at *4 (D.Md. Dec. 2, 2010); *Moats v. City of Hagerstown*, 324 Md. 519, 530 (1991) ("The language and history of the Law Enforcement Officers' Bill of Rights demonstrates an intent to establish an exclusive procedural remedy for a police officer in departmental disciplinary matters."). Under its provisions, "[a] law enforcement officer . . . may apply to the circuit court of the county where the law enforcement officer is regularly employed for an order that directs the law enforcement agency to show cause why the right should not be granted."  Md.Code Ann., Pub. Safety § 3-105(a).  There is no private right of action for violations of the LEOBR, and this is an inappropriate forum (and time) to seek redress.

Moreover, to the extent that Plaintiff seeks monetary relief related to the LEOBR (or any relief not limited to prospective injunctive relief), the Eleventh Amendment is also a bar to bringing the claim in this court.  A suit against the St. Mary's County Sheriff in his official capacity is essentially a suit against the state, because a county sheriff is a state official. *Boyers v. State*, 323 Md. 558, 572 (1991); *see Sanders v. Callender*, No. DKC-17-1721, 2018 WL 337756, at *8 (D.Md. Jan. 9, 2018).  A suit against a state official in his official capacity is "a suit against the official's office" and as such is "no different from

22

a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Before a state may be sued in federal court, it must unequivocally waive its sovereign immunity, *Pennurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984), and "it is settled that a State does not waive its Eleventh Amendment immunity merely by consenting to suit in its own courts," *In re Sec'y of Dep't of Crime Control & Pub. Safety*, 7 F.3d 1140, 1147 (4th Cir. 1993). There has been no waiver of sovereign immunity. Plaintiff's count under LEOBR will be dismissed.

## V. Surreply

Plaintiff filed a surreply without leave and without moving to permit filing of a surreply. (ECF No. 22). Defendant moved to strike. (ECF No. 23). Unless otherwise ordered by the court, surreply memoranda are not permitted to be filed. Local Rule 105.2(a). Surreplies may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply. Here, Plaintiff has identified no new matters raised in Defendant's reply, and, therefore, Defendant's motion to strike the surreply will be granted.

## VI. Conclusion

For the foregoing reasons, the motion to dismiss or in the alternative for summary judgment filed by Defendant Timothy Cameron will be granted in part and denied in part and the motion

to strike filed by Defendant will be granted.  A separate order

will follow.

                                                  /s/
                                              DEBORAH K. CHASANOW
                                              United States District Judge